# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUGH A. HAWKINS, ) | CASE NO. 8:07CV368 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM |
| ) | AND ORDER |
| RANDY INSERRA; CITIGROUP GLOBAL ) | |
| MARKETS, INC. d/b/a SMITH BARNEY; ) | |
| KEITH FEILMEIER AND GABRIEL ) | |
| TECHNOLOGIES CORPORATION, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the Motions to Dismiss submitted by Defendant Gabriel Technologies Corporation ("Gabriel")(Filing No. 21) and Defendant Citigroup Global Markets d/b/a Smith Barney ("Smith Barney")(Filing No. 38). For the reasons set forth below, both motions will be denied.

## FACTUAL ALLEGATIONS

In his Complaint (Filing No. 1), Hawkins alleges that on or about June 29, 2006, he purchased one million shares of Gabriel common stock for one million dollars, and acquired warrants to purchase 750,000 more shares of Gabriel common stock for one dollar per share. Hawkins alleges that he purchased the stock from Defendants Randy Inserra, a registered representative with Smith Barney ("Inserra"), and Keith Feilmeier, President/CEO and Chairman of the Board of Gabriel ("Feilmeier").

Hawkins claims that he was induced to make the purchase based on material misrepresentations made by Inserra and Feilmeier. Specifically, Hawkins alleges that Inserra and Feilmeier represented that Gabriel had developed certain products that were

in high demand; that Gabriel had entered into contracts to supply large quantities of the products to prominent customers; that Gabriel needed Hawkins's investment to purchase inventory to fill the pending orders; that although the shares offered to Hawkins were not registered with the Securities Exchange Commission, Smith Barney was in the process of handling the registration so that the shares would be available for public trade within 30 to 90 days[1]; and that the price of the shares Hawkins purchased would be sustained at one dollar per share pending the registration process.

Hawkins contends that the contracts and back-orders described by Inserra and Feilmeier did not exist; the process for registration of the stock Hawkins purchased was never commenced or completed; and that Gabriel paid Inserra an undisclosed $100,000 commission based on Hawkins's purchase of the stock.

Hawkins filed his Complaint on September 14, 2007, presenting claims against Inserra, Feilmeier and Gabriel under § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)); Rule 10b-5 of the Securities and Exchange Commission ("SEC"); Neb. Rev. Stat. § 8-1118; and common law fraud.  In addition, the Complaint presents claims against Smith Barney and Feilmeier based on federal and state controlling person liability, and against Smith Barney and Gabriel based on respondeat superior.

## STANDARD OF REVIEW

Both Gabriel and Smith Barney filed indexes of evidence in support of their motions. (Filing Nos. 20, 34, 43).  The Plaintiff, Hugh A. Hawkins ("Hawkins") filed an index of

---

[1]Hawkins contends that this representation was made on or about June 22, 2006.  Complaint, Filing No. 1, ¶11e.

evidence in opposition to Gabriel's motion. (Filing 32). The Court has considered the evidence as well as the parties' briefs.

The evidence submitted by Smith Barney (Filing No. 43) in support of its motion to dismiss is a record of state court proceedings which may be subject to judicial notice. Accordingly, both Hawkins and Smith Barney acknowledge that Smith Barney's motion may be addressed under the 12(b)(6) standard of review articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the factual allegations in the Complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . " *Bell Atlantic Corp. V. Twombly*, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.*, quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

The evidence submitted by the parties in connection with Gabriel's motion to dismiss requires that the Court treat the motion as one for summary judgment and dispose of it as provided in Fed. R. Civ. P. 56. (See Fed. R. Civ. P. 12(b)). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

**DISCUSSION**

Gabriel moved to dismiss Hawkins's federal causes of action[2] against it on the theory that those actions are time-barred. Smith Barney moved to dismiss all claims against it,[3] contending that Hawkins has not alleged facts sufficient to establish that Smith Barney was a "control person" with respect to the securities transaction at issue or that Inserra acted with actual or apparent authority of Smith Barney in connection with the transaction.

***Gabriel***

Gabriel argues that Hawkins was placed on notice, more than one year prior to the filing of the Complaint, that the alleged representations made by Inserra and Feilmeier were false and misleading. Accordingly, Gabriel contends that Hawkins's federal claims are time-barred.

The parties agree that the applicable standard is articulated in *Ritchey v. Horner*, 244 F.3d 635 (8th Cir. 2001):

> The time period in which an aggrieved party must bring an implied private cause of action under § 10(b) and Rule 10b-5 is governed by § 13 of the Securities Act of 1933, 15 U.S.C. § 77m (Supp. IV 1998). *Great Rivers Coop. of S.E. Iowa v. Farmland Indus.*, 120 F.3d 893, 896 (8th Cir. 1997) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 361, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)). Section 13 provides, as relevant here, that the action must be brought within one year after the discovery of the alleged misrepresentation or "after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

---

[2] The Motion to Dismiss (Filing No. 21) states that Gabriel is seeking the dismissal of Counts I and VIII of the Complaint. Two counts in the Complaint are numbered "VIII." The second "Count VIII" alleges respondeat superior liability on the part of Gabriel for alleged violations of federal, state and common law. (Complaint, Filing No. 1, p. 10). Gabriel does not object to the Court's exercise of continued supplemental jurisdiction over the state law claims. (See Filing No. 19, p.2, n.1).

[3] Complaint, Filing No. 1, Counts IV, V and VI.

> The reasonable diligence standard is an objective one, commonly referred to as the doctrine of "inquiry notice," because the one-year limitations period may be triggered even though the victim is unaware of the misleading statements if, in exercising reasonable diligence, he should have discovered their misleading nature. See *Great Rivers*, 120 F.3d at 896. We have said before that "inquiry notice exists when there are 'storm warnings' that would alert a reasonable person of the possibility of misleading information, relayed either by an act or by omission." *Id.* (quoting *Davidson v. Wilson*, 973 F.2d 1391, 1402 (8th Cir.1992)). Because plaintiffs' alleged failure to file suit within the period prescribed by § 13 is an affirmative defense, the [defendants] bear the burden of establishing it. See *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997); *cf. Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991) (recognizing that statute of limitations is an affirmative defense that defendant bears the burden to prove). Thus, the issue is whether defendants have shown that there is no genuine dispute of fact that plaintiffs were on inquiry notice [of the alleged misrepresentation] sometime before [one year prior to the filing of the action].

*Ritchey v. Horner*, 244 F.3d at 638-39.

> [T]here are three determinations a court must make in ascertaining whether the inquiry notice standard has been satisfied: "(1) the facts of which the victim was aware; (2) whether a reasonable person with knowledge of those facts would have investigated the situation further; and (3) upon investigation, whether the reasonable person would have acquired actual notice of the defendant's misrepresentations."

*Id.* at 639, quoting *Great Rivers Coop. of S.E. Iowa v. Farmland Indus.*, 120 F.3d at 896.

Gabriel notes that Hawkins signed a Subscription Agreement for the shares of stock and warrant rights on June 29, 2006. (Filing No. 20-2). In that Agreement, Hawkins acknowledged that the transaction was a private sale that had not been reviewed by the SEC, and that the shares were restricted and could not be resold or transferred unless later registered or unless an exemption from registration were to become available. (*Id.* ¶¶ 2.6 - 2.9, 4.1-4.3, 5). He also acknowledged his status as an experienced investor, able to bear the risk of the highly speculative nature of the investment. (*Id.* ¶¶ 2.1 - 2.4). The agreement contained the following clause:

6

> This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter thereof and merges and supersedes all prior discussions, agreements, and understandings of any and every nature between them. Each Subscriber acknowledges and agrees that the Company is making no representations in connection with the purchase and sale of the Shares except as expressly set forth herein.

*Id.* ¶ 6.3.

Gabriel also draws the Court's attention to a "Warrant" (Filing No. 20-3) executed by Feilmeier on June 29, 2006, listing Hawkins as the registered owner entitled to purchase 750,000 shares of Gabriel stock under certain terms and conditions. Gabriel notes that the Warrant permits the holder to demand that the Company file a registration statement for a public offering of the shares underlying the Warrant not less than six months nor more than 14 months after the issuance of the Warrant, in which case the Company, with limited exceptions, must file a registration statement with the SEC within 45 days of receipt of the demand. (*Id.* ¶ 1.15). Gabriel asserts that Hawkins made no such demand.

Gabriel argues that the terms of the Subscription Agreement and Warrant contradict the representations allegedly made to Hawkins by Inserra and Feilmeier, and therefore Hawkins was placed on inquiry notice of the alleged fraud when he read those documents on June 29, 2006. Because Hawkins's Complaint was not filed until September 14, 2007, Gabriel argues that the federal claims are time-barred.

7

This Court cannot conclude that the Subscription Agreement and Warrant[4] placed Hawkins on inquiry notice of the alleged fraud perpetrated by Inserra and Feilmeier. Hawkins alleges that on or about June 22, 2006, he was told that Gabriel had certain lucrative contracts pending for delivery of products that were on back-order, and that his investment was needed to purchase inventory to fill those orders. He alleges that, on the same date, he was told that the one million shares of stock he was offered were in the process of being registered with the SEC and would be available for public trade within 30 to 90 days. Nothing in the Subscription Agreement or Warrant directly contradicts those representations. While paragraph 6.3 of the Subscription Agreement purports to foreclose the possibility that the subscriber might rely on any discussions or representations preceding the written Agreement, paragraph 2.5 provides:

> The Subscriber represents that all information regarding the Company which was requested or desired has been furnished; that all other documents which could be reasonably provided have been made available for inspection and review; and that the Subscriber has been afforded the opportunity to ask questions of and receive answers from the Company concerning the terms and conditions fo the Private Sale and any additional information which has been requested.

The Subscription Agreement by its own terms, therefore, acknowledges that the Subscriber is relying on written or oral information provided by Gabriel before the execution of the Subscription Agreement. It is not reasonable to presume that a company could provide false and misleading information to a subscriber to induce him to invest, and then

---

[4] Hawkins does not concede that he is bound by any provisions in the Warrant, because it was not "presented to him for his signature." (Hawkins's Brief in Opposition to Gabriel's Motion to Dismiss, Filing No. 31-1, p.2). An any event, the fact that Hawkins apparently made no demand for the registration of the 750,000 shares underlying the Warrant is not material to the issues now before this Court. He complains, *inter alia*, that the 1,000,000 shares of Gabriel stock he did purchase were not registered, as allegedly promised. He does not appear to complain that the 750,000 shares he had a right to purchase in the future were not registered.

8

take refuge in "entire agreement" language such as that in paragraph 6.3 of the Agreement.

Using the three-step inquiry suggested by the Eighth Circuit Court in *Ritchey*, this Court finds, for purposes of the pending motion, that: (1) It was not until 90 days after the June 22, 2006, meeting that Hawkins was on notice that Gabriel had not registered the stock in accordance with Inserra's and Feilmeier's alleged representations.  The date of "inquiry notice" or "storm warnings," therefore, was on or about September 20, 2006.  (2) At that time, a reasonable person would have investigated the matter further. Hawkins states that he did meet with Feilmeier to discuss the status of the registration of his shares in late September 2006, and Feilmeier assured him that the registration would be complete and his shares would be tradable on October 13, 2006.  (Affidavit of Hugh A. Hawkins, Filing No. 32-2, ¶ 9).  (3) When the shares were not registered on October 13, 2006, a reasonable person would have acquired actual knowledge of the alleged misrepresentations.

At a minimum, there are genuine issues of material fact regarding whether Hawkins was on inquiry notice of the alleged misrepresentations at any time before September 14, 2006 – one year before the filing of the Complaint.  Accordingly, Gabriel has not met its burden of showing that Hawkins's action against it is time-barred.

### *Smith Barney*

Smith Barney argues that Hawkins's Complaint fails to allege sufficient facts to support a conclusion that Inserra acted with actual or apparent authority of Smith Barney in connection with the Gabriel stock transaction.  Accordingly, Smith Barney contends that Hawkins has not stated a cause of action under Section 20(a) of the Securities Exchange

Act of 1934 (Count IV), Neb. Rev. Stat. § 8-1118(3) (Count V), or respondeat superior (Count VI).

*Controlling Person Liability*

Count IV of the Complaint alleges that Smith Barney was a controlling person of Inserra under 15 U.S.C. § 78t (Securities Exchange Act of 1934, § 20), and is jointly and severally liable for his actions. Section 78t(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Count V of the Complaint alleges that Smith Barney was a controlling person of Inserra under Neb. Rev. Stat. § 8-1118(3), and is jointly and severally liable for his actions. Neb. Rev. Stat. § 8-1118(3) provides in part:

> Every person who directly or indirectly controls a person liable under subsections (1)[5] and (2)[6] of this section, including . . . every broker-dealer . . . who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

---

[5]Neb. Rev. Stat. § 8-1118(1) provides in part: "Any person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person buying the security from him or her . . . ."

[6]Neb. Rev. Stat. § 8-1118(2) provides in part: "[A]ny investment adviser who employs any device, scheme, or artifice to defraud such person [to whom the investment adviser provides investment adviser services] or engages in any act, practice, or course of business which operates or would operate as a fraud or deceit on such person shall be liable to such person."

This Court agrees with Hawkins's contention that the decision in *Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242 (8th Cir. 1993), is directly on point. In *Martin,* an investment advisor employed by Shearson told Martin to purchase a certain stock through a different brokerage house. The advisor's representations concerning the stock were in violation of securities laws. Martin sued Shearson as a controlling person, despite the fact that the purchase of stock was not made through Shearson, Shearson derived no benefit from the transaction, and the advisor acted against Shearson's instructions. *Id.* at 243-44.

The Eighth Circuit Court said: "We have held that the [controlling person] statute reaches persons who have only 'some indirect means of discipline or influence' less than actual direction." *Id.* at 244, quoting *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir. 1967). The Court noted that "liability did not depend on the controlling person's having exercised control over the particular transaction that gave rise to the violation." *Id.* Instead, the investment advisor's solicitation of business while employed by Shearson was "sufficient to make out a prima facie case of controlling person liability." *Id.* Shearson's good faith or failure to induce the investment advisor's wrongful actions were "matters for the defense." *Id.*

Hawkins's Complaint states a prima facie case of controlling person liability against Smith Barney. With respect to Count IV, Hawkins's federal claim of controlling person liability, it is Smith Barney's burden to demonstrate that it acted in good faith and did not directly or indirectly induce the act or acts constituting the alleged violation of federal securities laws. With respect to Count V, Hawkins's state claim of controlling person liability, it is Smith Barney's burden to demonstrate that it did not know and in the exercise of reasonable care could not have known of the existence of the facts giving rise to the alleged fraud.

*Respondeat Superior and Apparent Authority*

Smith Barney cites *Strong v. K&K Inv., Inc.*, 343 N.W.2d 912, 915-16 (Neb. 1984), for a concise statement of Nebraska law concerning the doctrine of respondeat superior:

> [I]n order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope fo his employment . . . . [T]he conduct of a servant is within the scope of employment if, but only if, it is of a kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master.

Hawkins's Complaint adequately alleges that Inserra was employed by Smith Barney at the time of the alleged fraud; that Inserra's conduct, *i.e.*, the sale of a security, was the kind of conduct he was employed by Smith Barney to perform; that the fraud occurred substantially within the authorized time and space limits of Inserra's employment; and that it was actuated, at least in part, by a purpose to serve Smith Barney. While the Complaint does not allege that Smith Barney received any direct compensation as a result of the transaction, it does allege that Inserra told Hawkins that Smith Barney was handling the registration of the securities that were the subject of the transaction and that the transaction was Inserra's effort to gain Hawkins's trust so that Hawkins would open an account with Smith Barney.

While Smith Barney argues that it did not authorize Inserra to perform the particular transaction at issue, Hawkins notes that Inserra had apparent authority to conduct the transaction in the course of his employment with Smith Barney. "Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals

with the agent, the principal is estopped from denying the agent's authority." *Draemel v. Rufenacht, Bromogen & Hertz, Inc.,* 392 N.W.2d 759, 764 (Neb. 1986). "Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business." *Id.*

## CONCLUSION

Hawkins's Complaint describes the circumstances constituting the alleged fraud with particularity, consistent with the requirements of Fed. R. Civ. P. 9(b). The allegations give the Defendants adequate notice to enable them to prepare responsive pleadings. Hawkins's federal causes of action against Gabriel are not time-barred. Hawkins's claims against Smith Barney state causes of action to which Smith Barney must respond. Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss (Filing No. 21) submitted by Defendant Gabriel Technologies Corporation is denied;

2. The Motion to Dismiss (Filing No. 38) submitted by Defendant Citigroup Global Markets d/b/a Smith Barney is denied; and

3. Defendants Gabriel Technologies Corporation and Citigroup Global Markets d/b/a/ Smith Barney will respond to the Complaint on or before December 28, 2007.

DATED this 18th day of December, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge